IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



HERBERT WHITE AND JAMES HAYES, *on behalf*
*of themselves and all other similarly situated,*

      Plaintiffs,

v.

CASHCALL, INC.,

Serve: One City Boulevard, Suite 102
    Orange, CA 92868

      Defendant.

Civil Action No. 3:16CV00311

## CLASS ACTION COMPLAINT

The Plaintiffs, Herbert White and James Hayes (hereafter "Plaintiffs"), by counsel, on behalf of themselves and all similarly situated individuals, allege as follows:

### PRELIMINARY STATEMENT

1. This is a consumer class action brought for willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Defendant CashCall, Inc. ("CashCall").

2. Plaintiffs allege class claims against CashCall pursuant to §§ 1681b(f) and 1681q of the FCRA. CashCall violated §§ 1681b(f) and 1681q as to the Plaintiffs and the putative class members by obtaining consumer reports without a permissible purpose and under the false pretenses, including but not limited to: (1) by obtaining consumer reports under the guise of Western Sky; (2) by concealing that the credit reports would be used by CashCall; and (3) by misrepresenting on disclosures and other documents that Western Sky obtained the reports.

3. Plaintiff White further allege individual claims against CashCall pursuant to § 1681s-2(b) because CashCall failed to conduct a reasonable investigation after receiving notice from Experian Information Solutions, Inc. ("Experian") that Plaintiff White disputed the accuracy of the information reported by CashCall.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Plaintiff Hayes is a resident of the Richmond Division and Experian regularly conducts business in this Division.

## PARTIES

9. Each Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

10. Defendant Experian Information Solutions Inc. ("Experian") is a foreign corporation doing business in Virginia. At all times relevant to this complaint, it was a "consumer reporting agency" as defined by the FCRA at 15.U.S.C. § 1681a(f).

## FACTS

### *Overview of Delbert Services, CashCall and Western Sky*

11. In order to attempt to circumvent state usury, payday lending, and consumer fraud statutes, John Paul Reddam ("Reddam") created several criminal enterprises, including CashCall, Delbert Services Corporation ("Delbert") and WS Funding, LLC ("WS Funding") to market and collect illegal loans.

12. Although another entity, Western Sky Financial, LLC, held itself out to consumers as the actual lenders of these internet payday loans, CashCall secretly funded these

illegal loans purportedly made by Western Sky and, *unbeknownst to consumers*, was the entity that performed the underwriting requirements and the advertising for the loans.

13. The companies engaged in this deceptive practice in order to evade liability because Westerns Sky held itself out to the public as a standalone tribal entity that was supposedly part of the Cheyenne River Sioux Tribe and, by its assertion, entitled to Native American Tribal Sovereign Immunity.

14. Although Western Sky operated within the boundaries of the Cheyenne River Sioux Reservation, the Sioux Tribe did not have any ownership interest or operating role in Western Sky, nor did it receive any profits from Western Sky.

15. Instead, Western Sky was owned and operated by Martin Webb, who was the sole manager and member of Western Sky.

16. Contrary to the misrepresentations in the Loan Agreement, Western Sky was not an actual lender. As explained by the New Hampshire Department of Banking in 2013, Western Sky was "nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators."

### *CashCall Obtains Plaintiff White's Credit Report Under False Pretenses*

17. In order to qualify for the internet payday loan, Western Sky *ostensibly* required consumers to electronically sign a loan agreement (the "Loan Agreement").

18. On November 20, 2012, Mr. White applied for a loan with Western Sky and electronically signed a template Loan Agreement.

19. As part of Reddam's deceptive scheme, the Loan Agreement did not reference CashCall and, more importantly, did not authorize Cashcall to obtain Mr. White's credit report.

20. After Mr. White submitted his application on November 20, 2012, he received an e-mail from Western Sky indicating that his application was conditionally approved.

21. Mr. White received another e-mail from Western Sky on November 20, 2012, entitled "Your Credit Score and the Price You Pay for Credit."

22. The "Your Credit Score and the Price You Pay for Credit" email was sent by "do.not.reply@westernsky.com."

23. On November 29, 2012, Mr. White received another email from Western Sky entitled "Notice of Assignment, Sale or Transfer of Servicing Rights." This e-mailed explained "[e]ffective today, your loan is now owned by WS Funding, LLC and will be serviced by a company called CashCall."

24. In May 2014, Mr. White requested a full copy of his file from Experian, who furnished Mr. White with a copy of his consumer disclosure.

25. In this disclosure, unbeknownst to the Plaintiff at the time, Experian falsely represented that it furnished Mr. White's credit report to Western Sky on November 20, 2012.

26. Recently, through discovery produced by Delbert in *Hayes v. Delbert Services Corporation*, Case No. 3:14-cv-258 (JAG), Plaintiff discovered that Experian did not, in fact, provide any report to Western Sky on November 20, 2012.

27. Instead, without a permissible purpose under § 1681b and as part of the scheme explained above, CashCall obtained Mr. White's report from Experian on November 20, 2012.

28. Mr. White never applied for credit with CashCall or authorized CashCall to pull his report, nor did CashCall provide Mr. White with a firm offer of credit. Accordingly, CashCall lacked a permissible purpose on November 20, 2012, to obtain Mr. White's report.

29. Moreover, CashCall—with the assistance of Experian—concealed its role in violation of § 1681q and obtained the report under the false pretenses of Western Sky as part of Reddam and CashCall's efforts to evade usury laws.

30. On October 8, 2014, Mr. White mailed a letter to Experian disputing the information purportedly reported by "Delbert Services/Consumer Loan Trust."

31. In his letter, Mr. White explained that the account should be deleted because the loan was null and void in Virginia. To verify the accuracy of his statements, Plaintiff enclosed regulations regarding consumer finance licensing in the Commonwealth of Virginia and a recent complaint against an internet payday lender filed by the Attorney General for the Commonwealth of Virginia showing that similar loans were considered null and void in Virginia.

32. Experian conducted its investigation of Mr. White's dispute by contacting CashCall.

33. More specifically, when Experian received a consumer dispute, Experian usually translates that dispute into an "ACDV" form.

34. Experian then electronically transmits the ACDV to the source of the information through a dispute system named "e-Oscar."

35. As reflected by the ACDV produced involving Delbert, Experian sent the ACDV to CashCall in response to Mr. White's dispute dated October 8, 2014.

36. Even though "[n]o one appears to seriously dispute that Western Sky's payday loans violated a host of state and federal lending laws," CashCall responded to the ACDV and instructed Experian to continue to report the loan as if it was valid and enforceable. *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016).

### *Facts Pertaining to Plaintiff James Hayes*

37. On August 6, 2012, Mr. Hayes applied for a loan with Western Sky and electronically signed a Loan Agreement similar to the version executed by Mr. White.

38. After Mr. Hayes submitted his application on August 6, 2012, he received an e-mail from Western Sky indicating that his application was conditionally approved.

39. Mr. Hayes received another e-mail from Western Sky on August 6, 2012, entitled "Your Credit Score and the Price You Pay for Credit."

40. The "Your Credit Score and the Price You Pay for Credit" email was sent by "do.not.reply@westernsky.com" and created the appearance that Western Sky obtained Plaintiff's report and evaluated him for a loan.

41. On August 9, 2012, Mr. Hayes received another email from Western Sky entitled "Notice of Assignment, Sale or Transfer of Servicing Rights." This e-mailed explained "[e]ffective today, your loan is now owned by WS Funding, LLC and will be serviced by a company called CashCall."

42. Recently, through discovery produced by Delbert in *Hayes v. Delbert Services Corporation*, Case No. 3:14-cv-258 (JAG), Plaintiff discovered that, prior to the transfer, CashCall obtained his credit report from Experian on August 6, 2012.

43. CashCall also obtained Mr. Hayes's credit report on August 6, 2012, from Decision Logic—another consumer reporting agency.

44. Mr. Hayes never applied for credit with CashCall or authorized CashCall to pull his report, nor did CashCall provide Mr. Hayes with a firm offer of credit. Accordingly, CashCall lacked a permissible purpose on November 20, 2012, to obtain Mr. Hayes's report.

45. Nevertheless, CashCall concealed its role and obtained the report under the false pretenses of Western Sky as part of Reddam and CashCall's efforts to evade usury laws.

46. As a result of CashCall's conduct, Plaintiffs and the putative class members suffered concrete injuries, including invasions of their privacy. In addition to having their privacy invaded, Plaintiffs and the class members' personal identifying information and private financial information were unlawfully obtained by CashCall and, upon information and belief, uploaded to its related information sharing affiliates, such Delbert and WS Funding, which subjected class members to an increased risk of identity theft and/or data breach.

47. Additionally, Plaintiffs and the class members suffered concrete informational injuries as CashCall's conduct deprived Plaintiffs of learning who obtained their private financial information and, who, in turn actually provided them with the underlying illegal loan.

## COUNT ONE:
## VIOLATION OF 15 U.S.C. § 1681b(f)
## CLASS CLAIM

48. Plaintiffs repeat every allegation above as if set forth herein in full.

49. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of a class initially defined as follow:

> All natural persons residing in the United States: (1) whose consumer report was obtained by CashCall (2) from Experian or Decision Logic (3) on or after a date five years prior to the filing of this action.

50. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. The names and addresses of the Class Members are identifiable through the internal business records maintained by CashCall (and Experian) and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

51. **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether CashCall had a permissible purpose to obtain the Plaintiffs' and putative Class Members' consumer reports; and (b) whether CashCash's violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and the putative Class Members.

52. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative Class Member. Plaintiffs, as well as every punitive Class Member, allege violations of the same FCRA provision, 15 U.S.C. §§ 1681b(f). This claim challenges CashCall's uniform procedures for obtaining consumer reports from Experian. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative Class.

53. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this action.

54. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the

controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

55. Defendant violated § 1681b(f) of the FCRA as to the Plaintiffs and putative Class Members by obtaining their consumer reports from Experian and/or Decision Logic without a permissible purpose as required by § 1681b. Prior to the transfer of the loan, CashCall did not have a permissible purpose to obtain Plaintiffs or the class members' consumer reports.

56. These ongoing intrusions were either intentional, or CashCall cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering CashCall liable pursuant to 15 U.S.C. § 1681n.

57. Plaintiffs and the putative Class Members are entitled to recovery statutory damages, punitive damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT TWO:**
**VIOLATION OF 15 U.S.C. §§ 1681q(a)**
**CLASS CLAIM**

58. Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of a class initially defined as follow:

> All natural persons residing in the United States: (1) whose consumer report was obtained by CashCall (2) from Experian or Decision Logic (3) on or after a date five years prior to the filing of this action.

60. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant (and/or Experian) and the class members may be notified of the pendency of this action by published and/or mailed notice.

61. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues are: (a.) Whether CashCall, as a matter of common practice, deceptively obtained consumer reports through the front of Western Sky; (b.) whether CashCall's misrepresentations and deception regarding Western Sky's role in obtaining the reports violates § 1681q; and (c.) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and the putative class members.

62. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs, as well as every punitive class member, allege violations of the same FCRA provisions, 15 U.S.C. § 1681q. This claim challenges CashCall's uniform procedures and practices of obtaining consumer reports under the guise of Western Sky. In

addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

63. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs will adequately represent the putative class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs nor their counsel have any interests that might cause him not to vigorously pursue this action.

64. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the class members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

65. CashCall violated § 1681q as to the Plaintiffs and the putative class members by obtaining consumer reports under the false pretenses, including but not limited to: (1) by obtaining consumer reports under the guise of Western Sky; (2) by concealing that the credit reports would be obtained and used by CashCall; and (3) by misrepresenting on disclosures and other documents that Western Sky obtained the reports.

66. These ongoing intrusions were either intentional, or CashCall cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering CashCall liable pursuant to § 1681n.

67. Plaintiffs and the putative class members are entitled to recovery statutory damages, punitive damages, costs, and attorneys' fees from CashCall in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT THREE:
## VIOLATIONS OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)-(E)
## (INDIVIDUAL CLAIM)

68. Mr. White restates each of the allegations in the preceding paragraphs as if set forth at length herein.

69. On one or more occasions within the past two years, by example only and without limitation, CashCall violated § 1681s-2(b)(1)(A)-(E) by: (1) by failing to fully and properly investigate Plaintiff's disputes; (2) by failing to review all relevant information provided by Experian; and (3) by publishing its representations in Mr. White's credit reports without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to Experian.

70. Based on the manner in which Experian responded to Plaintiffs' disputes, Plaintiffs allege that Experian did in fact forward Plaintiffs' disputes via an ACDV to CashCall.

71. Notwithstanding the above, CashCall followed a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all CashCall did was review its own internal computer screen for the account and repeat back to the ACDV system the same information that CashCall already had reported to Experian.

72. When CashCall receives a consumer dispute through e-Oscar, CashCall does not conduct a substantive review of any sort to determine whether the underlying loan was illegal pursuant to the consumer's state-lending laws.

73. Similarly, as a matter of policy, CashCall never added the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian.

74. As a result of CashCall's violations of 15 U.S.C. §1681s-2(b)(1)(A)-(E), Mr. White suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

75. The violations by CashCall were willful, rendering CashCall liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, CashCall was negligent, which entitles Mr. White to recovery under 15 U.S.C. §1681o.

76. As a result, Mr. White is entitled to recover actual damages, statutory damages and/or punitive damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Herbert White and James Hayes request that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendant for: (1) certification for this matter to proceed as a class action under Rule 23; (2) for statutory and

punitive damages, declaratory and injunctive relief as pled herein; (3) for attorneys' litigation expenses and costs of suit; and (4) such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**HERBERT WHITE & JAMES HAYES**
By Counsel

_____
James W. Speer, (VSB# 23046)
Virginia Poverty Law Center
919 E. Main Street, Suite 610
Richmond, VA 23219
(804) 782-9430
Fax: (804) 649-0974
Email: jay@vplc.org

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, VSB#82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard A. Bennett, VSB #37523
Susan M. Rotkis, VSB #40639
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
(757) 930-3660
(757) 930-3662 Facsimile
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiffs*